UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GERRARDO FERNANDEZ CASTILLO,<br><br>Petitioner,<br><br>v.<br><br>BRUCE SCOTT and MARKWAYNE MULLIN,<br><br>Respondents. | CASE NO. 2:26-cv-03507-JNW<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

## 1. INTRODUCTION

Gerrardo Fernandez Castillo is a Mexican asylum applicant who was detained on entry and paroled into the United States on May 10, 2021. Over five years later, Immigration and Customs Enforcement (ICE) re-detained him without notice or an opportunity to be heard and sent him to the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") in Tacoma, Washington. Fernandez Castillo, proceeding pro se, petitions for a writ of habeas corpus. Dkt. No. 4. For the reasons below, the Court GRANTS the petition.

## 2. BACKGROUND

Fernandez Castillo fled Mexico with his wife and four children after the cartel tortured him for refusing to work for it. Dkt. No. 4 ¶ 2. On May 10, 2021, he entered the United States seeking asylum and presented himself and his family at the border. The Government briefly detained him and his family after which DHS released them on parole. *Id.* ¶¶ 4–5; Dkt. No. 9 ¶¶ 4, 6.

For nearly five years, Fernandez Castillo built a live for himself, his wife, and their four children in the United States. On April 19, 2022, he applied for relief from removal. Dkt. Nos. 9 ¶ 8; 4 ¶ 6. The Government granted him work authorization through April 2025. Dkt. No. 4 ¶ 7. Fernandez Castillo says his attorney took on the renewal of that authorization, but the Government's records show no renewal. *Id.*; Dkt. No. 9 ¶ 12. On January 25, 2023, an Immigration Judge (IJ) ordered him removed to Mexico. Dkt. No 9 ¶ 11. His appeal of that decision remains pending. *Id.* ¶ 19; Dkt. No. 4 ¶ 8. After his re-detention, Fernandez Castillo learned that his attorney had scammed him—and many others—and had done nothing on his immigration case. Dkt. No. 4 ¶ 9. He says the attorney later committed suicide and the office closed, so he has been unable to obtain his immigration file. *Id.*

ICE states that Fernandez Castillo violated a condition of his parole by failing to report that he had moved from Red Bluff, California. Dkt. No. 9 ¶¶ 6, 14–15. Fernandez Castillo declares he worked in Oregon but that he "maintained [his] last address" in California. Dkt. No. 4 ¶ 11. The Government does not provide a copy of his parole document.

On July 30, 2026, the Government "executed a search warrant on an illegal marijuana grow in Marion County, Oregon," where they encountered and re-detained Fernandez Castillo because he "was unlawfully present in the United States." Dkt. No. 9 ¶ 16. Fernandez Castillo says he believed the business was legitimate because it asked for his work documents. Dkt. No. 4 ¶ 13. The search warrant was not directed at Fernandez Castillo, and he has not been charged with or convicted of any crime. *Id.* ¶¶ 19–20; Dkt. No. 8-2 at 35–36. That day, ICE transferred him to NWIPC where he remains detained. Dkt. No. 9 ¶ 17. The Government gave him no notice or hearing before detaining him. Dkt. No. 4 ¶ 17.

## 3. DISCUSSION

### 3.1 Legal standard.

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004). A district court's habeas jurisdiction extends

to challenges to immigration-related detention. *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

In addition to habeas relief, federal courts have “long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation.” *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). “Where habeas petitioners raise Due Process claims and have also invoked the Court’s jurisdiction under 28 U.S.C. § 1331, the Court has ‘the authority both to entertain [the petitioner’s] constitutional challenges and to grant injunctive relief in response to them,’ ‘irrespective of the accompanying habeas petition.’” *Francisco Lorenzo v. Bondi*, No. 2:25-cv-02660-LK, 2026 WL 237501, at *6 (W.D. Wash. Jan. 29, 2026) (quoting *Roman*, 977 F.3d at 941–42).

A plaintiff seeking a permanent injunction must demonstrate “(1) that [he] ha[s] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.” *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

### 3.2 Revocation of release and re-detention must comport with due process even under § 1225(b).

The Government contends Fernandez Castillo is lawfully detained because ICE re-detained him under 8 U.S.C. § 1225(b)(2) after his parole expired. Dkt. No. 7 at 5–6. The Court need not resolve the statutory question. Even assuming Fernandez Castillo is detained under § 1225(b)(2)(A), the constitutional question remains: was

Fernandez Castillo deprived of his liberty without due process when ICE revoked his release and re-detained him without notice or a hearing? Courts in this District have consistently answered yes, whatever detention statute applies.[1]

### 3.3 Fernandez Castillo's re-detention without notice and a pre-deprivation hearing violates procedural due process.

To determine what process the Government must provide before depriving a person of a constitutionally protected interest, courts apply the test set out in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). They weigh the private interest at stake, the risk of erroneous deprivation through existing procedures, and the Government's interest. *Id.* This Court has previously found no reason to distinguish

---

[1] *See, e.g.*, *Osuna Benitez v. Hermosillo*, No. 2:25-cv-02535-BAT, 2025 WL 3763932, at *3 (W.D. Wash. Dec. 30, 2025) (citing *Zadvydas v. Davis*, 533 U.S. at 693); *see also Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (quoting *E.A. T.-B v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025)) ("[T]he fact 'that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.'"); *Arrioja Blanco, et al. v. Hermosillo, et al.*, No. C26-493-MLP, 2026 WL 548056, at *2 (W.D. Wash. Feb. 27, 2026) ("Courts have held that noncitizens paroled or released from § 1225(b) custody retain a protected liberty interest in continued release and are entitled to procedural safeguards before being returned to custody, regardless of whether § 1225(b)(1) or (b)(2) applies."); *Bealter Reyes et al. v. Hermosillo et al.*, No. 2:26-cv-00270-TLF, 2026 WL 507678, at *2 (W.D. Wash. Feb. 24, 2026) ("[T]he Court need not consider whether there is a statutory basis . . . upon which petitioners may be lawfully detained . . . because even assuming a statute permits government detention of an individual, the Due Process Clause may provide procedural protections not found in the statue."); *P.T. v. Hermosillo*, No. C25-2249-KKE, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected.").

parole cases from similar cases in which ICE revoked orders of supervision without providing pre-deprivation notice or an opportunity to be heard. *See Espinoza Palacios v. Hermosillo*, No. 2:26-CV-491-JNW, 2026 WL 686138, at *7 (W.D. Wash. Mar. 11, 2026); *Gomez Candelo v. Noem*, No. 2:26-CV-00576-JNW, 2026 WL 879049, at *4 (W.D. Wash. Mar. 31, 2026). All three *Mathews* factors favor Fernandez Castillo.

First, his private interest is perhaps at its height, as "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Fernandez Castillo lived in the community for over five years. His wife and their four kids are here. Dkt. No. 4 ¶¶ 4, 18, 26. His asylum appeal is pending. *Id.* ¶ 24; Dkt. No. 9 ¶ 19. His liberty interest exists even though his release was conditional and must be afforded substantial weight. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025) (collecting cases); *see also Dieng v. Hermosillo*, No. 2:26-CV-00190-LK, 2026 WL 411857, at *7 (W.D. Wash. Feb. 13, 2026) ("A petitioner's liberty interest [does] not expire along with his parole.") (citation modified). "When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025).

The Government contends Fernandez Castillo's liberty interest is lessened because his parole expired so he has the same liberty interest as a person stopped at the border. Dkt. No. 7 at 7 (citing *Kleber Vasquez v. Hernandez*, No. 2:26-cv-02873-

TMC, 2026 WL 2936770 (W.D. Wash. Sept. 29, 2026); *Del Valle Castillo v. Wamsley*, No. 2:25-cv-02054-TMC, 2025 WL 3524932, at *6 (W.D. Wash. Nov. 26, 2025)). Neither case carries that weight. While *Kleber Vasquez* found that the petitioner's "legal status regarding admission reverted to that of an arriving noncitizen once her parole expired," the court held that "the Due Process clause continued to require constitutionally adequate procedures surrounding her detention." 2026 WL 2936770, at *2. *Kleber Vasquez* also acknowledged the cases in this District finding an implied continuation of parole but held they did not apply because ICE returned the petitioner to custody "within a short time" after her parole expired—it lodged a detainer the day she was arrested, three months after her parole ended. 2026 WL 2936770, *4. Not so here. By the Government's own account, Fernandez Castillo's parole expired in May 2022, and ICE waited over four more years before acting.

The Government cites *Del Valle Castillo* for the proposition that "[w]hen the government releases a § 1225 detainee under humanitarian parole, it reserves the right to continue to treat the non-citizen 'as if stopped at the border.' In other words, that parolee could be treated as seeking admission' despite a long period of living in the United States while on humanitarian parole." 2025 WL 3524932, at *6 (quoting *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215 (D. Mass. 2025) (citation modified) (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020))). But the Ninth Circuit recently rejected that reading of *Thuraissigiam*, which it described as "an admission, not a detention, case." *Padilla v. U.S. Immigr. & Customs Enf't*, No. 24-2801, --- F.4th ----, 2026 WL 2822044, at *19 (9th Cir. Sept. 21, 2026). As the court explained, "[a]dmission and detention occupy fundamentally

different positions in our legal order," *id.* at *16, so *Thuraissigiam* does not bar a noncitizen's due process challenge to his detention—even when he is subject to mandatory detention under § 1225(b), *id.* at *19. And regardless, *Del Valle Castillo* concerned whether petitioners were entitled to consideration for release on bond under 8 U.S.C. § 1226(a), not whether the Government violated their due process rights. 2025 WL 3524932, at *1.

The Court remains persuaded by the many decisions holding that the statute under which a noncitizen is detained does not override his constitutional due process rights. *Morales v. Hernandez*, No. 2:26-CV-01686-DGE, 2026 WL 1753643, at *4 (W.D. Wash. June 18, 2026) ("Courts in this district have consistently concluded that an individual such as Petitioner who has been released on parole under § 1182(d)(5)(A) and has lived with relative freedom in the United States for a number of years, has a protected interest in not being detained."); *see also supra* at 5 n.1. Nor does the expiration of parole change the analysis. ICE "did not arrest [Fernandez Castillo] when [his] parole expired," does not say it re-detained him because it expired, and so "exercised its discretion to continue [his] conditions of release past the automatic expiration of [his] parole." *Espinoza Palacios*, 2026 WL 686138, at *9.

Second, the risk of erroneous deprivation and the value of additional procedures are high. The Government asserts that Fernandez Castillo "failed to satisfy his parole obligation to inform [ICE] of any changes to his residential address," Dkt. No. 7 at 6, but the Government does not argue that Fernandez Castillo—a noncitizen with no criminal record, a pending immigration appeal, and a

wife and four children in the United States—is a flight risk or danger to the community.

The Government instead contends that the risk of error is low because ICE was entitled to re-detain Fernandez Castillo any time after his parole expired. Because he was paroled and never admitted, the Government argues he is owed only the process Congress provided by statute. Dkt. No. 7 at 8–9. But the Government cites no case in this Circuit in support and, as discussed above, the Ninth Circuit limited that argument and confirmed that "[n]oncitizens who arrive illegally and are found away from the border well after arrival are protected from arbitrary detention in violation of the Due Process Clause." *Padilla*, 2026 WL 2822044, at *19; *see also Shinwari v. Hermosillo*, No. 2:26-cv-00009-RAJ, 2026 WL 262605, at *4 (W.D. Wash. Jan. 30, 2026) ("The fact "[t]hat the express terms of the parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide an individualized hearing *prior* to re-detaining the parolee.") (citation modified). While the Government may "disagree with decisions in this District" on humanitarian parole, Dkt. No. 7 at 8 (citing *Dieng*, 2026 WL 411857, at *6), its disagreement does not change the outcome of those cases.

Third, the Government's interest in re-detaining Fernandez Castillo without a hearing is low. Nothing prevented ICE from scheduling a hearing after it learned that his parole had expired. *See E.A. T.-B.,* 795 F. Supp. at 1324. And the Government's interest in enforcing its humanitarian parole statute "is *weakened* when it fails to act within a reasonable time upon the expiration of a noncitizen's

parole." *Kleber Vasquez*, 2026 WL 2936770, at *4 (citation modified). The Government's long delay all but extinguishes that interest here. The Government's interest in preventing noncitizens from remaining in the United States without status, Dkt. No. 7 at 9, is also "not implicated here, where [Rios Nava's] *detention* is at issue—not [his] removal from the United States." *Espinoza Palacios*, 2026 WL 686138, at *8. Nor does the Government present evidence that Fernandez Castillo engaged in "unnecessary delay" of his immigration proceedings. Dkt. No. 7 at 9. Indeed, Fernandez Castillo says he has "not missed any appointment or court proceeding" and "want[s] to continue pursuing [his] asylum claim[.]" Dkt. No. 4 ¶¶ 24, 27 (citation modified).

Finally, the Government argues it did not violate Fernandez Castillo's due process rights "when ICE carried out [Fernandez Castillo]'s detention pursuant to Section 1225(b) and its implementing regulations, following the automatic termination of his parole and his subsequent arrest." Dkt. No. 7 at 9 (citing *Ndiaye v. Blanche*, No. 2:26-CV-02145-TMC, 2026 WL 2468275, at *2 (W.D. Wash. Aug. 21, 2026)). The Court has already rejected these arguments, and *Ndiaye* does not compel a different result. There, the petitioner argued that the Government violated his due process rights "by failing to follow proper procedures before re-detaining him" less than a year after his parole expired and after ICE learned that Seattle police had arrested him. *Id.* at *1–2. Here, Fernandez Castillo has no criminal record and ICE re-detained him over *four* years after his parole expired.

All three *Mathews* factors favor Fernandez Castillo and support finding that his re-detention violated procedural due process. *Aslan v. Wamsley*, No. 2:25-cv-

02698-JNW, 2026 WL 238675, at *3 (W.D. Wash. Jan. 29, 2026) (citing *E.A. T.-B.*, 795 F. Supp. 3d at 1324). Courts in this District and elsewhere have consistently reached the same conclusion. *See, e.g.*, *Tessema v. Bondi,* No. C25-2330-JNW-MLP, 2025 WL 4033288, at *1 (W.D. Wash. Dec. 11, 2025), *report and recommendation adopted*, No. C25-2330-JNW-MLP, 2026 WL 84922 (W.D. Wash. Jan. 12, 2026); *Pineda v. Chestnut*, No. 1:25-cv-01970-DC-JDP (HC), 2026 WL 25510, at *5 (E.D. Cal. Jan. 5, 2026) ("Although Respondents allege in their opposition that Petitioner repeatedly violated the terms of her release [citation omitted], no neutral arbiter has determined whether those facts show that Petitioner is a flight risk or danger to the community."); *Ramirez Tesara*, 2025 WL 3288295, at *1, *6 (even when it alleges supervised release violations, the Government must provide notice and a pre-detention hearing to comply with due process); *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1201–03 (W.D. Wash. 2025) (revocation of an OREC requires notice and a pre-deprivation hearing); *Nguyen v. Bondi*, No. 2:25-CV-02723-RAJ, 2026 WL 183819, at *4 (W.D. Wash. Jan. 23, 2026) (revocation of an OSUP requires notice and a pre-deprivation hearing); *Tzafir v. Bondi*, No. 25-CV-02067-JHC-SKV, 2026 WL 74088, at *3–5 (W.D. Wash. Jan. 9, 2026) ("The Government's redetention of Petitioner with insufficient notice and no opportunity to be heard violates the due process protections afforded to her by the Constitution."). This case presents nothing that would warrant a different result.

It is undisputed that Fernandez Castillo did not receive notice or a hearing before his re-detention. Accordingly, the appropriate remedy is release. Similarly, because Fernandez Castillo was previously managed under less restrictive

conditions of release, the Government must demonstrate that those alternatives to detention are no longer adequate before reimposing the most restrictive option. *See Luis Barraza Laguna et al. v. Julio Hernandez et al.*, No. 2:26-CV-00864-GJL, 2026 WL 2516736, at *2 (W.D. Wash. Aug. 14, 2026).

Because the parties agree Fernandez Castillo does not have a final order of removal, the Court does not reach his claim that his detention has become unconstitutionally prolonged. *See* Dkt. No. 4 at 21–22 (citing *Zadvydas*, 533 U.S. at 690).

**3.4 The Government must follow the law if it re-detains Fernandez Castillo.**

Having found due process violations, the Court further finds that issuing the requested injunctive relief is appropriate. *See* Dkt. No. 4 at 30–31. Each of the four *eBay* factors supports this conclusion. *See eBay,* 547 U.S. at 391.

Fernandez Castillo suffered irreparable harm through the violation of his constitutional right to due process and almost three months of unlawful detention. He has been separated from his family for that entire time, causing his wife and their four children significant hardship. Dkt. No. 4 ¶ 21. No monetary remedy can compensate for the deprivation of physical liberty. The balance of hardships favors Fernandez Castillo, as the injunction requires only that the Government comply with the Constitution before re-detaining him. And the public interest is served by an order prohibiting the Government from violating the Due Process Clause and ignoring the many cases that have found re-detention without notice or an opportunity to be heard is unlawful.

Fernandez Castillo has also established a "cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). ICE has already arbitrarily detained him without due process, despite over five years of living and working in the community and pursuing lawful status. He has no criminal record and the Government did not re-detain him until over four years after his parole expired. This raises concerns that, absent injunctive relief, he may be subject to the same due process violation again. Moreover, for months, courts in this District have repeatedly found that the Government's conduct in revoking release and re-detaining noncitizens without pre-deprivation process is unconstitutional. The Government has chosen to "respectfully disagree" with those orders and to continue its current practices. Thus, the Court finds the Government has expressed "an avowed intention to continue the challenged conduct." *Espinoza Palacios*, 2026 WL 686138, at *10 (citation modified). The Government makes no argument in response to Fernandez Castillo's request for injunctive relief.

Accordingly, the Court prohibits Fernandez Castillo's re-detention unless the Government first provides written notice of the basis for the proposed re-detention and an Immigration Court hearing is held to determine whether detention is appropriate.

## 4. CONCLUSION

Accordingly, the Court orders as follows.

1. The Petition for a Writ of Habeas Corpus is GRANTED. Dkt. No. 4.
2. The Government must RELEASE Fernandez Castillo within TWENTY-FOUR (24) hours of this order, subject to the conditions of his most recent parole agreement.
3. Within FORTY-EIGHT (48) hours of this order, the Government must provide the Court with a status report confirming that Fernandez Castillo has been released from custody and informing the Court of the date and time of his release.
4. On release, the Government must return Fernandez Castillo's personal property, including personal identification and employment authorization documents (other than a passport). *See Zavala Sandoval v. Hernandez*, No. 2:26-CV-01198-JNW, 2026 WL 1661379, at *6 (W.D. Wash. June 9, 2026).
5. The Government is permanently enjoined from re-detaining Fernandez Castillo, or placing an electronic GPS monitoring device on him, during the pendency of his removal proceeding absent written notice and a hearing prior to re-detention where it must prove by clear and convincing evidence that he is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks.
6. Fernandez Castillo also asks the Court to order his "repatriation to a public place" but provides no location or basis for this source of relief. The Court DENIES this additional request for relief.

Dated this 30th day of October, 2026.

Jamal N. Whitehead
United States District Judge